**OVITRON CORPORATION, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 67 Civ. 3731.**

United States District Court
S. D. New York.

Jan. 29, 1969.

As Amended on Rehearing Feb. 26, 1969.

---

Hopgood & Calimafde, New York City, for plaintiff; John M. Calimafde, Arthur M. Lieberman, New York City, of counsel.

Edward B. Wallace, New York City, for defendant; George W. Coombe, Jr., John J. Higgins, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Defendant in this action was the low bidder on and was awarded a United States Army contract for a large quantity of squad radios, a lightweight portable radio, the receiver of which can be attached to the standard military helmet. Plaintiff was the second lowest bidder on this contract.

Plaintiff charges in substance that defendant purposefully monopolized the market in squad radios by knowingly and intentionally bidding below cost and thus excluded plaintiff from this market. The amended complaint sounds in three counts, the first for alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; the second for common law unfair competition; and the third for alleged violation of the Indiana Acts against combinations and monopolies. Defendant's answer in substance denies any wrongdoing or liability.

Defendant has moved for summary judgment pursuant to Rule 56, F.R.Civ.P. Defendant's papers in support of its motion do not materially change the factual picture presented in the amended complaint. The question here is, basically, whether the amended complaint alleges a claim for relief and if so whether there are material issues of fact which require a trial.

In 1962 Delco Radio (Delco), a division of defendant General Motors Corp., was one of a number of manufacturers invited by the Army to submit bids for the design and development of a squad radio. Delco was awarded the "Development Contract" on the basis of its total submission, although it was not the lowest bidder.

In 1964, 1965 and 1966 contracts for small quantities of squad radios were negotiated between Delco and the Army. Then in June, 1966, Delco contracted to supply the Army with over 5,000 transmitters and receivers, at a negotiated price.

On November 14, 1966, the Army invited competitive bids on squad radios. Bidders were asked to submit bids for 3,200 radios for a single year or alternatively for 28,811 radios on a multi-year basis. Quite naturally, the bids per squad radio submitted by most of the sixteen bidders were lower under the multi-year proposal than under the single year alternative.

Delco's bid of $273.10 for each squad radio under the single year alternative and $169.75 under the multi-year alternative was the lowest. It is plaintiff's contention that this bid was below defendant's cost. Defendant has not seriously attempted to controvert this contention on the present motion, but does not, other than for the purposes of the motion, concede this to be the fact. Accordingly, for present purposes only, it will be assumed that defendant's bid was below cost.

In any case, the Army Contracting Officer recommended to the Board of Award of the United States Army Electronics Command that Delco be awarded the contract. This recommendation was followed and Delco was given the award on the basis of its multi-year offer. The 28,811 radios were to be delivered over a three year period between February 1968 and January 1971.

Plaintiff was the second lowest bidder with bids of $279.40 under the single year and $211.61 under the multi-year alternatives.

Subsequent to the award of this contract, the Army negotiated two additional contracts with Delco for 7,821 and 5,010 squad radios at a price of $279 each,[1] to meet urgent Army needs. Apparently, certified cost and pricing data was submitted to the Army by Delco during the course of these negotiations.

The nub of plaintiff's claim is that Delco wilfully and intentionally bid below cost on the competitive squad radio contract, with the object and purpose of obtaining a monopoly in the market for this unique product and succeeded in so doing. Plaintiff charges that Delco's conduct was in violation of Section 2 of the Sherman Act.

The claim based on a conspiracy theory under Section 1 of the Sherman Act, alleged in the amended complaint, is not presently pressed.

■ Bearing in mind the Supreme Court's admonition in Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), that "summary procedures should be used sparingly in complex antitrust litigation", I turn to the merits. See also South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414, 420 (4th Cir. 1966).

## I

The Sherman Act § 2, 15 U.S.C. § 2, provides:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

Three separate but related offenses may each form the basis for a § 2 violation: monopolization, attempt to monopolize or conspiracy to monopolize. Mackey v. Sears, Roebuck & Co., 237 F.2d 869 (7th Cir. 1956). Monopolization, according to the most recent Supreme Court pronouncement, consists of two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." United States v. Grinnell Corp., 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966).

For purposes of this motion for summary judgment the relevant market is squad radios, apparently a product suitable only for military uses. For such purposes only, this is not challenged by the defendant. In the United States at least, the sole customer appears to be the United States Army, though plaintiff claims that there is a foreign market also. As far as appears from the papers before me, Delco is and has been for some time the sole supplier of this product and appears to occupy 100% of the United States market.

■ Plainly, in the usual case, "a predominant share of the market" and certainly an exclusive market position such as Delco seems to have here, would demonstrate "the possession of monopoly power in the relevant market". United States v. Grinnell Corp., supra at 571, 86 S.Ct. at 1704.

Delco urges, however, that there cannot be monopolization in the proscribed sense here because the Government is the sole customer and the contract of which plaintiff complains was let on a competitive bid basis in accordance with the Armed Services Procurement Act, 10 U.S.C. § 2305. Thus, says the de-

---

[1]. It may be noted that this price was almost identical with plaintiff's bid price on the single year contract and considerably in excess of plaintiff's bid price on the multi-year alternative.

fendant, all competitors had an equal right to compete as bidders, its low bid was entirely proper and justified and there could be no Section 2 violation.

It further urges that it possesses no monopoly power in the proscribed sense because the Government is entitled to call for competitive bidding at any time to obtain another supplier. This, it is said, is an effective weapon in the hands of the Government to curb the power of any supplier to control prices, exclude competition and thus exercise monopoly power.

Plaintiff's response, however, is that as a practical matter Delco does enjoy the power to control prices and exclude competition. This is because of the know-how, experience, and facilities for the manufacture of squad radios which it alone had as a result of being awarded the multi-year contract.[2] Thus, says the plaintiff, the Government must necessarily turn to Delco for any additional squad radio requirements because it is the only manufacturer able to supply them in large quantity. In fact, the Government appears to have done so subsequent to the acceptance of Delco's low bid on the publicly let contract by its subsequently negotiated agreement with Delco for large additional quantities of the product.

■ It cannot be said as a matter of law, that under the circumstances of this case, Delco does not possess monopoly power in the relevant squad radio market. The question of whether it does or not poses issues of fact which require a trial.

## II

■■ If it can be established that Delco possessed monopoly power, plaintiff must then show that Delco wilfully acquired or maintained such power "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." Grinnell Corp., supra. Here it may well develop that, unlike the more typical monopolization case under Section 2, Delco acquired what may be properly referred to as a natural product monopoly.[3] Apparently the Army, as the only user of squad radios, has thus far limited its suppliers to one, i. e., the lowest bidder on the publicly let procurement contract who met its requirements. If, as a result, monopoly power is acquired, such power would necessarily reside in any bidder who prevailed.

■■ Plainly, it cannot be said that any bidder on such a Government contract as we are dealing with here who was successful and has thereby acquired a natural monopoly, has therefore violated Section 2. On the other hand, the natural monopolist is not immune from Section 2. See American Football League v. National Football League, 323 F.2d 124 (4 Cir. 1963); Union Leader Corp. v. Newspapers of New England Inc., 284 F.2d 582 (1st Cir. 1960).

■■ Even in the case of the more usual monopoly, the mere possession of monopoly power does not necessarily violate Section 2. If a "superior product, business acumen, or historic accident" was the reason for the acquisition of monopoly power, United States v.

2. It is suggested in plaintiff's papers that tooling up for the manufacture of large quantities of this product takes as much as a year.

3. Kaysen and Turner, Antitrust Policy 191 (1959), define a natural monopoly as follows:
"Natural Monopoly. In the economic sense, natural monopoly is monopoly resulting from economies of scale, a relationship between the size of the market and the size of the most efficient firm such that one firm of efficient size can produce all or more than the market can take at a remunerative price, and can continually expand its capacity at less cost than that of a new firm entering the business. In this situation, competition may exist for a time but only until bankruptcy or merger leaves the field to one firm, in a meaningful sense, competition is self-destructive."

Grinnell Corp., supra, or if the monopoly was thrust upon the defendant, United States v. Aluminum Co. of America, 148 F.2d 416 (2d Cir. 1945), no liability results.

■■■■ Where a natural monopoly exists, somewhat more latitude is allowed. The natural monopolist is entitled to compete vigorously and fairly in a struggle for a market which cannot support more than one supplier. "In other words, a natural monopoly market does not of itself impose restrictions on one who actively, but fairly, competes for it, any more than it does on one who passively acquires it." Union Leader Corp. v. Newspapers of New England Inc., supra, 284 F.2d p. 584. The question in each case must be whether the possessor of natural monopoly power acquired or maintained such power through the use of means which are "exclusionary, unfair or predatory." American Football League v. National Football League, supra, 323 F.2d p. 131.

The question here, then, is whether the alleged conduct of Delco in bidding below cost was unfair, predatory or exclusionary.

Pricing below cost is a severely anticompetitive tactic frequently engaged in by corporations with significant resources to drive weaker competitors from the field. While the consumer may be the immediate beneficiary of the price struggle, if the tactic succeeds he will eventually be subject to the economic strength and therefore the discretionary pricing of the survivor. In the meantime, competitors will be driven out, not by the superior efficiency of the larger entity, but rather by the greater resources which enable it to sustain temporary losses for a longer time.

■■■ It is against tactics of this kind that many states have passed legislation prohibiting sales below cost, either generally or in particular industries. 1 Callman, Unfair Competition, Trademarks and Monopolies, § 27, 3rd Ed., 1967; cf. Robinson Patman Act, 15 U.S.C. § 13 (prohibition against primary line discrimination in pricing). There is little doubt that if a monopolist, other than a natural monopolist, were to engage in below-cost pricing with the purpose of acquiring or maintaining a monopoly, Section 2 would be violated.[4] I see no compelling reasons for treating a natural monopolist differently.

If the defendant is shown to have acquired monopoly power in the squad radio market, there appear to be questions of fact which require trial as to whether defendant's conduct violated Section 2.

### III

Defendant urges that even if the complaint alleges a violation of § 2, it is entitled to summary judgment because plaintiff cannot establish that it would have been awarded the contract had defendant not bid below cost. Defendant denies that there is a causal relationship between its alleged violation of the antitrust laws and plaintiff's alleged injury, since plaintiff as the second lowest bidder was not assured of obtaining the contract even if defendant had not bid below cost or not bid at all.

The Invitation for Bids contained the following condition:

"8. Award of Contract.—(a) The contract will be awarded to that responsible bidder whose bid, conforming to the Invitation for Bids, will be most advantageous to the Government, price and other factors considered.

(b) The Government reserves the right to reject any or all bids and to waive informalities and minor irregularities in bids received."

---

4. Story Parchment Company v. Paterson Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Package Closure Corporation v. Sealright Co., 141 F.2d 972 (2d Cir. 1944). See also, Sales Below Cost Prohibitions; Private Price Fixing Under State Law, 57 Yale L.J. 391, 399 n. 27 (1948).

These conditions conform to the provisions of the Armed Services Procurement Act, 10 U.S.C. § 2305.

Although it is apparent that price is not the sole determinant for the award of the contract, this is hardly sufficient to establish as a matter of law that plaintiff would not, as the second lowest bidder, have been awarded the contract. Plainly, price is a significant if not the primary factor which the government considers.

Each party has submitted an affidavit by Robinson, an Army procurement officer familiar with the contract involved here. Without attempting to resolve any seeming conflicts between these two affidavits, it can be said that they at least leave open the question of whether plaintiff, approved as a responsible bidder on another Army contract, would not have been awarded this one had the Delco bid not been accepted.

■ On the record before me on this motion, there is a genuine issue of fact as to whether the plaintiff would have been awarded the contract had defendant not bid below cost.

Defendant's reliance on Keogh v. Chicago & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), is misplaced. There a manufacturer of excelsior sued a group of interstate carriers alleging injury resulting from a conspiracy to exact higher rates than otherwise would have been charged. Plaintiff sought to measure its damages by a hypothetical lower rate. However, such a rate would have had to be approved by the Interstate Commerce Commission as nondiscriminatory. Since the Commission was not then authorized to pass on this question, it was clear that plaintiff could not adduce the necessary proof on the question of injury.

The case at bar is clearly distinguishable. While the Army Procurement authorities would have had to approve Ovitron as responsible, this determination is apparently rather routine and may be susceptible of proof even in the absence of actual Board approval.

## IV

■ Finally, defendant argues that plaintiff cannot recover since its damages are speculative. Plaintiff seeks as damages the profit it would have made had its bid for the squad radio contract been accepted and also profits on future business with the Army stemming from the contract. In Story Parchment Co. v. Paterson Co., supra, involving a conspiracy to monopolize in violation of the Sherman Act, a similar attack based upon the speculative nature of the damages was made by the defendants. In disposing of this contention the court said:

"Nor can we accept the view * * * that the verdict of the jury, in so far as it included damages for the first item, cannot stand because it was based upon mere speculation and conjecture. This characterization of the basis for the verdict is unwarranted. It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount." Id. 282 U.S. at 563, 51 S.Ct. at 250.

This seems to dispose quite adequately of defendant's contention as to plaintiff's second element of damage. As to the lost profits plaintiff allegedly suffered from failure to obtain the contract in question, I am unable to see how these are even arguably speculative if the other elements of plaintiff's case are established.

The motion for summary judgment is in all respects denied.

It is so ordered.