## OVITRON CORPORATION, Plaintiff,
v.
## GENERAL MOTORS CORPORATION, Defendant.

No. 67 Civ. 3731.

United States District Court,
S. D. New York.

July 10, 1973.

Sandoe, Hopgood & Calimafde, New York City, for plaintiff by John M. Calimafde, Arthur M. Lieberman, Marvin N. Gordon, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for defendant; John R. Hupper, Paul M. Dodyk, James F. Gleason, Jr., New York City, John W. Chierichella, of counsel.

## OPINION

BONSAL, District Judge.

On September 14, 1967, plaintiff instituted this action under Section 4 of the Clayton Act (15 U.S.C. § 15) against the defendant. The amended complaint alleges that the Delco Electronics Division ("Delco") of defendant acquired or attempted to acquire monopoly power over a certain radio set (hereinafter referred to as the "Squad Radio") ; that it did so by bidding a price in response to an invitation for bids issued by the United States Army Electronics Command ("USAECOM") on November 14, 1966, which bid was below its anticipated costs of production; that it submitted that bid with the intention of destroying competition; and that plaintiff was injured in its business as a result of the alleged conduct. Plaintiff further alleges that defendant's conduct violated §§ 1 and 2 of the Sherman Act (15 U.S. C. §§ 1 and 2), the law of unfair competition, and §§ 1 and 2 of the Indiana Statutes relating to combinations and monopolies (Burns Ind.Stat. §§ 23–116, 117, IC 1971, 24–1–2–1, 24–1–2–2), and seeks treble damages. Prior to trial, plaintiff abandoned its claim under the Indiana Statutes and § 1 of the Sherman Act.

Plaintiff is a New York corporation having its principal place of business in Newburgh, New York. Its Standard Winding Division, also located in Newburgh, is engaged in the business of manufacturing commercial and military electronic equipment and components. Defendant, General Motors Corporation, is a Delaware corporation having its principal place of business in Detroit, Michigan. Its Delco division, located at Kokomo, Indiana, is engaged primarily in the business of manufacturing commercial radio and electronics equipment.

All parties having waived a jury trial, this case was tried to the court on the issue of liability only on April 2–5 and 9–11, 1973. At the conclusion of plaintiff's case, the court granted defendant's motion to dismiss on the ground that plaintiff had failed to establish a prima facie case that it had suffered any injury to its business or property. As stat-

ed by Judge Bryan in denying defendant's motion for summary judgment:

"On the record before me on this motion, there is a genuine issue of fact as to whether the plaintiff would have been awarded the contract had defendant not bid below cost." Ovitron Corp. v. General Motors Corp., 295 F.Supp. 373, 379 (S.D.N.Y.1969). See SCM Corp. v. Radio Corporation of America, 407 F.2d 166, 171 (2d Cir.) cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969); Bookout v. Schine Chain Theatres, Inc., 253 F.2d 292, 295 (2d Cir. 1958); Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678, 679 (2d Cir. 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956); Momand v. Universal Film Exchanges, 172 F.2d 37, 43 (1st Cir. 1948), cert. denied, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1949); Advance Business Systems & Supply Co. v. SCM Corp., 415 F.2d 55, 63 (4th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970); VTR, Inc. v. Goodyear Tire & Rubber Co., 303 F.Supp. 773, 780–784 (S.D.N.Y.1969).

## SQUAD RADIO

The Squad Radio is a lightweight portable radio made for use by soldiers in the field, and consists of a receiver designated AN/PRR–9 and a transmitter designated AN/PRT–4. The receiver is an FM receiver operating on one channel at a frequency of 47–57 MC and weighs approximately 8 ounces with its battery. The transmitter is an FM transmitter which can operate on two discrete channels at a frequency of 47–57 MC and weighs approximately 18 ounces with its battery. The transmitter can operate over distances of up to one mile.

The Squad Radio was developed by the United States Government and Delco over the period 1962–65. A development contract was awarded to Delco on August 23, 1962 and was completed about a year and a half later with about six to ten prototypes being manufactured by Delco. The development contract was followed by a Production Engineering Measurement Contract ("PEM Contract") which was awarded to Delco on June 30, 1964, and which provided that Delco would draw up a set of specifications describing the materials, test procedures, and construction plans for the Squad Radio; and deliver two engineering models of the radio, 30 production model transmitters, and 100 production model receivers. The Government accepted the prototypes manufactured by Delco.

On June 27, 1966, Delco was awarded a negotiated contract for the manufacture of 5,690 receivers and 5,190 transmitters. Delco quoted a price of $285.11 per Squad Radio ($151.92 for the transmitter and $133.19 for the receiver), and delivered the Squad Radios between December 1966 and June 1967.

## INVITATION FOR BIDS

On November 14, 1966, USAECOM issued an invitation for bids ("IFB") which sought alternate bids on a single-year procurement program of 3,200 Squad Radios ("Alternate A") and a multiyear program of 28,811 Squad Radios ("Alternate B"). Under both alternates, a test report of preproduction models was to be submitted 180 days after the date of the award document ("ADAD"). Alternate A called for the delivery of 3,200 Squad Radios beginning 360 ADAD and ending 510 days ADAD. Alternate B called for the delivery of 28,811 Squad Radios during three program years. Production under Alternate B was to begin 360 days ADAD with 3,200 Squad Radios to be produced during the first program year, 6,502 Squad Radios to be produced during the second program year, and 19,109 Squad Radios to be produced over the third program year. The bid instructions provided that the contract would be awarded on whatever basis, multiyear or single-year, which resulted in the lowest price per unit. Each bidder was supplied with a detailed set of specifications based on information furnished by

Delco, including drawings of each component of the Squad Radio and identification of certain approved suppliers thereof.

Sixteen bids were submitted in response to the IFB, which were opened on January 13, 1967.[1] Delco's bid of $273.10 per Squad Radio under Alternate A and $169.89 per Squad Radio for Alternate B were the lowest bids. Plaintiff was the second lowest bidder, with a bid of $279.40 per Squad Radio under Alternate A and $211.61 per Squad Radio under Alternate B. On February 28, 1967, Delco was awarded a contract under Alternate B at a price per Squad Radio of $169.75.

[1].

Schedule of Bids

| Bidder | Alternate A (Single-year procurement 3,200 Squad Radios unit prices) | Alternate B (Multi-year procurement 28,811 Squad Radios unit prices) |
|---|---|---|
| 1. Manst Corp. Bethesda, Md. | 333.80 | 262.87 |
| 2. Anaheim Corp. Lear-Siegles, Inc. Anaheim, Calif. | 336.00 | 274.50 |
| 3. Symmetrics Corp. of Fla. Satellite Beach, Fla. | 395.00 | 275.00 |
| 4. Arvin Industries, Inc. Elec. Sym. Columbus, Ind. | 407.15 | 227.77 |
| 5. Ovitron Corp. Newburg, N. Y. | 279.40 | 211.61 |
| 6. Canadian Commercial Corp. DMI Cossor Elect. Ltd. Dartmouth, Nova Scotia | 355.00 | 306.00 |
| 7. Motorola, Inc. Chicago, Ill. | 507.70 | 258.00 |
| 8. Delco Radio | 273.10 | 169.89 |
| 9. Cosmos Industries Brooklyn, N. Y. | 499.14 | 412.07 |
| 10. Oklahoma Aerotronics Hartshone, Okla. | 386.07 | 334.78 |
| 11. Bristol Electronic, Inc. New Bedford, Mass. | 324.75 | 312.00 |
| 12. Memcor, Inc. Huntington, Ind. | 359.42 | 242.44 |
| 13. Magnavox Co. Fort Wayne, Ind. | 476.73 | 265.17 |
| 14. Electro Space Corp. Glencove, N. Y. | 306.00 | 242.00 |
| 15. Duffers Assoc., Inc. Troy, N. Y. | 460.80 | *429.41 |
| 16. Spencer-Kennedy Lab Boston, Mass. | 508.35 | **508.35 |

 \* Duffers Assoc., Inc., quoted $429.41 for the first year delivery of 3,200 Squad Radios, $415.65 for the second year delivery of 6,502 Squad Radios, and $403.-89 for the third year delivery of 19,109 Squad Radios, all under Alternate A.
\*\* Spencer-Kennedy Lab quoted $508.35 for the first year delivery of 3,200 Squad Radios, $422.91 for the second year delivery of 6,502 Squad Radios, and $389.-16 for the third year delivery of 19,109 Squad Radios, all under Alternate B.

Thereafter, Delco was awarded three additional negotiated contracts for the production of Squad Radios covering the production of 12,831 Squad Radios at prices ranging between $279.28 to $303.-68 per Squad Radio.

Plaintiff contends that the price bid by Delco in the amount of $169.89 in response to the IFB Alternate B was below its cost. In support of this contention, there were introduced Delco's cost estimate sheets and minutes of meetings where the cost of producing the Squad Radios was discussed. The cost estimate sheet received in evidence indicated a cost in excess of $170 per Squad Radio and contained a notation "170". Considerable testimony was developed at the trial to indicate that the $170 did not include an allowance for general burden and administrative expenses—which was countered by evidence that Delco contemplated further savings in labor and material costs.

From the evidence introduced at trial, plaintiff established a prima facie case that the Squad Radio is the relevant market for purposes of this litigation. There was testimony at trial that the Squad Radio had certain distinctive features from other radios in use at this time; that during the period 1966–72, it was the only approved radio for squad use; and that substantially all purchases of the Squad Radio were by the U. S. Military. See United States v. Grinnell Corp., 384 U.S. 563, 571–576, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); United States v. E. I. du Pont de Nemours & Co., 351 U.S. 377, 393, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); Brown Shoe Co. v. United States, 370 U.S. 294, 325–328, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). The court further finds that plaintiffs established a prima facie case that Delco had monopoly power by reason of its earlier Government contracts which developed the Squad Radio, (United States v. Grinnell Corp., supra), and that plaintiff made out a prima facie case that its bid of $169.89 was below its projected cost estimates. United States v. Grinnell Corp., supra; Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 120–121, 68 S.Ct. 947, 92 L.Ed. 1245 (1948); Ovitron Corp. v. General Motors Corp., supra at 378. However, in addition to establishing a prima facie case that defendant possessed monopoly power and bid below cost, plaintiff had the burden of making a prima facie showing that it was injured in its business and property. SCM Corp. v. Radio Corp. of America, supra; Bookout v. Schine Chain Theatres, Inc., supra. Plaintiff contends that since it was the next lowest bidder, it would have received the contract automatically if it had not been for the Delco bid. However, this does not follow. The Armed Services Procurement Regulations ("ASPR") (32 C.F.R. ¶ 1.902, et seq. (Jan. 1, 1967)) provide that the lowest bidder does not get the contract automatically, but that inquiry must be made to determine whether that bidder is able to comply with the delivery schedule, taking into consideration its capacity and its business commitments, whether it has the necessary technical skills and experience, whether it has adequate financial resources, and whether it has a satisfactory record of compliance with other Government contracts. Plaintiff failed to introduce any evidence on this score.

Defendant, on the other hand, brought out evidence tending to show that the plaintiff had failed to meet its commitments under other Government contracts during the period here involved. Prior to the award of the IFB, plaintiff had been awarded two contracts by the military for the production of the AN/PRC 9A and 10A radios. The first contract was awarded on June 29, 1963 and the second contract was awarded on June 22, 1966 and modified on September 30, 1966 and November 30, 1966, which modifications increased the procurement. The total value of the second contract, including the modifications, was $1,994,760. Shortly before the award of

the IFB, plaintiff had also been awarded contracts for the production of certain receivers and amplifiers. On February 20, 1967, eight days prior to the award of the IFB, plaintiff received from the Defense Supply Agency a letter dated February 16, 1967 affording plaintiff an opportunity to show cause why the June 22, 1966 contract should not be terminated for plaintiff's failure to meet the delivery schedule. Between July 5, 1966 and May 11, 1967, plaintiff was assessed liquidated damages on the contracts for the production of receivers and amplifiers for late deliveries. The testimony at trial indicates that a show cause letter and the assessment of liquidated damages were important adverse factors in the consideration of responsibility.

There is also evidence that Delco had informed the Government prior to the invitation for bids that on the basis of its PEM Contract it was of the opinion that the price of the Squad Radios under the IFB should be less than $200. In light of this prior estimate, there is no evidence to show that the Government would have awarded the contract at the price bid by plaintiff. The ASPR provided that the Government could have rejected all of the bids in an invitation for bids where the price bid was unreasonable, where the needs of the Government could have been met by a less expensive article, or otherwise cancellation would have been in the best interest of the Government. (32 C.F.R. § 2.404 (Jan. 1, 1967)).

Even if the defendant would be unable to rebut plaintiff's prima facie case that its bid was below cost, plaintiff has failed to produce any evidence to show that it would have been awarded the contract under the invitation for bids. Failing to establish this, it has failed to make out a prima facie case of injury to its business from the defendant's actions. SCM Corp. v. Radio Corp. of America, *supra*; Bookout v. Schine Chain Theatres, Inc., *supra*.

The foregoing, together with the attached findings of fact and conclusions of law,[2] constitutes the court's findings of fact and conclusions of law. Rule 52(a), Fed.R.Civ.P.

Settle judgment on notice.

2. Omitted from published opinion.