**AMERICAN STANDARD, INC., Plaintiff,**

v.

**THE BENDIX CORPORATION, Defendant.**

Civ. A. No. 73CV670–W–B.

United States District Court, W. D. Missouri, W. D.

March 20, 1980.

266

Bruce H. Gerhard, of Lewis, Mitchell & Moore, Washington, D. C., with whom were Henry M. Moore, John B. Tieder, Jr. and Randall C. Allen, Washington, D. C., and John C. Noonan, of Stinson, Mag & Fizzell, Kansas City, Mo., for plaintiff American Standard, Inc.

Erwin N. Griswold, of Jones, Day, Reavis & .Pogue, Washington, D. C., with whom were Eldon H. Crowell, Peter B. Work and George Ruttinger, of Crowell & Moring, Washington, D. C., and Jerome T. Wolf, of Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant The Bendix Corporation.

ORDER DENYING THE MOTION OF DEFENDANT THE BENDIX CORPORATION FOR SUMMARY JUDGMENT ON THE ANTITRUST COUNT (COUNT I) OF THE COMPLAINT OF AMERICAN STANDARD, INC.

WILLIAM H. BECKER, Senior District Judge.

Plaintiff American Standard, Inc. (ASI) brought this civil action in four counts against The Bendix Corporation (Bendix), alleging violation of federal antitrust statutes, fraud, and breach of contract, and seeking treble damages, rescission, and other relief.

In Count I of its complaint filed on December 20, 1973, ASI alleged that Bendix monopolized the manufacture, distribution and sale of APX–72 electronic navigational transponders sold to the government of the United States, in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. ASI further alleged in Count I that Bendix, with specific intent to monopolize, attempted to monopolize the manufacture, distribution and sale of APX–72 transponders, also in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. ASI further alleged in Count I that Bendix engaged in acts and practices designed to perpetuate and maintain its unlawful monopoly.

In Count II, Count III and Count IV of its complaint, ASI alleged fraudulent inducement, fraud, and breach of contract by Bendix, and sought damages, rescission, and related relief. A separate motion of Bendix for summary judgment involves Count II and Count III.

On October 3, 1977, Bendix moved, pursuant to Rule 56, F.R.Civ.P., for an order granting it summary judgment on the antitrust count, Count I, of the complaint of ASI. Bendix and ASI have filed briefs in support of, and in opposition to, the motion of Bendix for summary judgment. The parties have each filed voluminous narrative statements of fact, and responses to those filings, as part of the pretrial process. A plenary hearing to make a formal record and oral arguments on the motion of Bendix for summary judgment were held on April 24, 1978.

At the pretrial conference of August 30, 1979, this Court announced the denial of the motion of Bendix for summary judgment on the antitrust count. (Transcript of August 30, 1979 Pretrial Conference at 6.) This order shall set forth the reasons for the denial of that motion of Bendix.

CONCLUSION THAT THE MOTION OF BENDIX FOR SUMMARY JUDGMENT SHOULD BE DENIED

A. Summary Judgment

Rule 56(c), F.R.Civ.P., provides in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The principles this Court must apply in deciding a motion for summary judgment are well established. The Eighth Circuit Court of Appeals recently summarized those principles in *McLain v. Meier* (C.A. 8 1979) 612 F.2d 349, l.c. 355–56, where it is stated: "Summary judgment is a harsh remedy and is to be granted sparingly; the burden is on the movant to show that he is entitled to the judgment sought. The case is to be viewed in the light most favorable to the party opposing the motion, and he is to be granted the benefit of all inferences favorable to him that the record warrants." Further, as stated in the case of *Roberts v. Browning* (C.A. 8 1979) 610 F.2d 528, l.c. 531,

> In this case the burden was on the defendant to establish beyond controversy that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. Plaintiff was entitled to have the case viewed in the light most favorable to him and to have the benefit of all inferences favorable to him that might be reasonably drawn from the evidence.

*See also, McMahon v. Meredith Corp.* (C.A. 8 1979) 595 F.2d 433, l.c. 438; *Starling v. Valmac Industries, Inc.* (C.A. 8 1979) 589 F.2d 382, l.c. 386; *Watts v. Brewer* (C.A. 8 1978) 588 F.2d 646, l.c. 648; *EEOC v. Liberty Loan Corp.* (C.A. 8 1978) 584 F.2d 853, l.c. 857.

It has been stated by the Eighth Circuit Court of Appeals that "courts do not lightly enter summary judgment on the merits in antitrust cases." *Willmar Poultry Co. v. Morton-Norwich Products, Inc.* (C.A. 8 1975) 520 F.2d 289, l.c. 292, *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976). In accord are *Scranton Const. Co. Inc. v. Litton Indus. Leasing Corp.* (C.A. 5 1974) 494 F.2d 778, l.c. 781, *cert. denied,* 419 U.S. 1105, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975); *Beckman v. Walter Kidde & Co.* (C.A. 2 1971) 451 F.2d 593, *cert. denied,* 408 U.S. 922, 92 S.Ct. 2488, 33 L.Ed.2d 333 (1972).

The Eighth Circuit Court of Appeals has warned that "summary judgment should be granted sparingly in antitrust suits, particularly when the action is based upon complicated and extensive evidence." *Admiral Theatre Corp. v. Douglas Theatre Corp.* (C.A. 8 1978) 585 F.2d 877, l.c. 889. In accord are *Modern Home Institute, Inc. v. Hartford Acc. & Indem. Co.* (C.A. 2 1975) 513 F.2d 102, l.c. 109; *Premier Elec. Const. Co. v. Miller-Davis Co.* (C.A. 7) 422 F.2d 1132, l.c. 1138, *cert. denied,* 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970).

Attention is also invited to the recent opinion of the Supreme Court of the United States in *McLain v. Real Estate Board of New Orleans, Inc.,* —— U.S. ——, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). In that case, the Supreme Court held erroneous the dismissal by the district court of a complaint alleging violation of § 1 of the Sherman Act, 15 U.S.C. § 1. The Supreme Court noted that it "is axiomatic that a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)". —— U.S. at ——, 100 S.Ct. at 511, 62 L.Ed.2d at 453 (1980).

It is upon these legal standards for summary judgment that the motion of Bendix for summary judgment on the antitrust count of the complaint of ASI must be decided.

**B. The Question of Monopolization**

Section 2 of the Sherman Act, 15 U.S.C. § 2, proscribes monopolization of any part of the trade or commerce among the several states. The United States Supreme Court described the elements of the offense of monopolization in *United States v. Grinnell Corporation,* 384 U.S. 563, l.c. 570–71, 86 S.Ct. 1698, l.c. 1704, 16 L.Ed.2d 778, l.c. 786 (1966), in which it is stated:

> The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

*See also,* L. Sullivan, *Handbook of the Law of Antitrust* § 7, at 29–30 (1977), discussing the requirements for an action brought under § 2 of the Sherman Act, 15 U.S.C. § 2.

Solely for the purposes of its motion for summary judgment, Bendix accepts the definition of the relevant market, relied on by ASI, as the United States government market for APX–72 transponders (Transcript of oral argument held April 24, 1978 [Tr.] at 8); the facts alleged in the narrative fact statements of ASI (Bendix Brief at 2); and the fact that Bendix had the requisite intent to monopolize the APX–72 market (Bendix Brief at 2).

Bendix contends that its motion for summary judgment "is founded on the narrow thesis . . . that it neither possessed nor came dangerously close to attaining the requisite power to monopolize Plaintiff's designated APX–72 'market'." (Bendix Brief at 2.) Therefore, Bendix contends that it "cannot, as a matter of law, be found to have violated Section 2 of the Sherman Act." (Bendix Brief at 3, Tr. at 8–9.)

ASI agrees that "the only remaining issue is whether at the time defendant undertook the injurious conduct complained of by plaintiff it possessed monopoly power or a dangerous probability of obtaining such monopoly power." (Tr. at 19, ASI Brief at 17.) However, in opposing the present motion of Bendix for summary judgment, ASI alleges that the "evidence which is admitted for purposes of Bendix's motion for summary judgment is sufficient to permit the jury to infer the existence of monopoly power or dangerous probability of success, and Bendix's motion must therefore be denied." (ASI Brief at 3.)

■ Monopoly power in the context of this action is the power to control prices or exclude competition. *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, l.c. 391, 76 S.Ct. 994, l.c. 1005, 100 L.Ed. 1264, l.c. 1278 (1956); *United States v. Grinnell Corp., supra,* 384 U.S. at 571, 86 S.Ct. at 1704, 16 L.Ed.2d at 786 (1966); *TV Signal Co. v. A.T. & T. Co.* (C.A. 8 1972) 462 F.2d 1256, l.c. 1261.

■ Monopoly power can be distinguished from a lesser amount of market power only in degree. Courts have utilized several methods in assessing the power of the defendant in the relevant market to determine whether monopoly power can be inferred from the available evidence or assumed facts.

■ The traditional and predominant method is to ascertain the percentage share of sales, production, or other measures of productive activity in the total market which is held by the alleged monopolist. The existence of monopoly power may be inferred from the relative dominance of the particular firm in the relevant market. *United States v. Aluminum Co. of America* (C.A. 2 1945) 148 F.2d 416; *United States v. United Shoe Machinery Corp.* (D.Mass.1953) 110 F.Supp. 295, *aff'd per curiam,* 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954); *United States v. Grinnell Corp., supra,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). *See,* L. Sullivan, *Handbook on the Law of Antitrust, supra,* § 22, at 74 (1977); C. Hills, *Antitrust Advisor* § 1.55, at 58 (2d ed. 1978).

■ In *United States v. Columbia Steel Company,* 334 U.S. 495, l.c. 528, 68 S.Ct. 1107, l.c. 1124, 92 L.Ed. 1533, l.c. 1554 (1948), the United States Supreme Court recognized that the market concentration test by itself was often an inadequate measure of monopoly power, since "the relative effect of percentage command of a market varies with the setting in which that factor is placed." Therefore, in assessing the market power of the defendant, the structural features of the relevant market should also be considered. The nature and existence of entry barriers, barriers to expansion, potential competition, scale economies, homogeneity of products, and the competitive performance of firms in the industry, for example, all are factors, among others, which may affect the defendant's ability to exert monopoly power in the relevant market. *See, United States v. E. I. du Pont de Nemours & Co., supra,* 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); *United States v. United Shoe Machinery Corp., supra,* (D.Mass.1953) 110 F.Supp. 295, *aff'd per curiam,* 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954). *See also,* L. Sullivan, *Handbook on the Law of Antitrust, supra,* §§ 23 and 24 (1977); C. Hills, *Antitrust Advisor, supra,* § 1.55, at 59 (2d ed. 1978).

■ In analyzing the first element of an action brought under § 2 of the Sherman Act, 15 U.S.C. § 2, the power of the defendant to control prices or exclude competition in the relevant market, the conduct of the defendant in the market may also be considered. The rationale for this conduct analysis is explained in L. Sullivan, *Handbook of the Law of Antitrust, supra,* § 25, at 80–81 (1977), as follows:

A firm operating within a market structure where it possesses or can gain power will be aware of its own potency and potential; in striving to maximize profits (or other related values) it will act in ways aimed at preserving and enhancing its endowment of market power. By contrast, a firm in a competitive market will take price as given. Its decisions about output will reflect only its costs and its

expectation about how market price may vary.

Given these assumptions about the difference between the way in which a powerful firm will act and that in which a powerless firm will act, a theoretical basis is established for looking directly at conduct in seeking to decide whether a firm has market power. If a firm acts as though it possesses market power, the trier of fact may infer that it possesses such power.

*See, United States v. United Shoe Machinery Corp., supra,* (D.Mass.1953) 110 F.Supp. at 341–46, *aff'd per curiam,* 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954).

■ After an analysis of the market power of Bendix in the United States government market for APX–72 transponders, as outlined above, the burden of the movant Bendix is to show that no inference of monopoly power is possible from the factual record viewed in the light most favorable to ASI.

■ Bendix contends that its power in the APX–72 market must be measured by the percentage share held by Bendix for new increments of demand for APX–72 transponders, relying upon *United States v. General Dynamics Corporation,* 415 U.S. 486, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1974), and *United States v. El Paso Natural Gas Company,* 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). However, the cases cited by Bendix in support of this proposition involve the analysis of market power in cases brought under § 7 of the Clayton Act, 15 U.S.C. § 18, which prohibits acquisitions when "the effect of such acquisition may be substantially to lessen competition, or tend to create a monopoly", not the analysis of market power necessary for cases brought under § 2 of the Sherman Act, 15 U.S.C. § 2, which prohibits monopolization or attempts to monopolize.

In *United States v. Grinnell Corporation, supra,* 384 U.S. at 573, 86 S.Ct. at 1705, 16 L.Ed.2d at 788 (1966), the United States Supreme Court found "no reason to differentiate between 'line' of commerce in the context of the Clayton Act and 'part' of commerce for purposes of the Sherman Act" in determining the relevant market. That case did not hold that the analysis of market power necessary for § 7 of the Clayton Act, 15 U.S.C. § 18, was interchangeable with that necessary for § 2 of the Sherman Act, 15 U.S.C. § 2. *See also,* J. von Kalinowski, Market Definition Under Section 2: The Applicability of Clayton Act § 7 Analysis, 10 Southwestern Univ.L.Rev. 95, l.c. 98 (1978). Thus, the cases relied upon by Bendix are inapposite.

In contending that its market power must be measured only by its percentage share of "new increments of demand", Bendix also fails to take into account the more searching analyses of the structure of the market and of market conduct which are available, and so its contention must fail.

The relevant market defined by ASI, and accepted by Bendix for the purpose of its motion for summary judgment, is the United States government market for APX–72 transponders. In this single buyer, single product market the ability of a dominant firm to control price or exclude competition may differ from the power a dominant firm may assert in a multiple buyer, potentially competitive market.

The unique structure of the assumed relevant market in this action is crucial in determining the ability of Bendix to possess monopoly power. At the time of the acts complained of, the United States government was the only actual or potential buyer of APX–72 transponders. The production of these devices required a high level of technological experience, and lengthy lead time prior to production. Because of the sophisticated nature of the product, potential entrants into the market required the data concerning the initial production by the developing firm. Potential competitive entrants required detailed specifications and models of the device before responsive bids for subsequent procurement could be developed. Such features of the APX–72 market may have entrenched the market position of the firm which was awarded the initial development and production contracts.

A similar case was presented for decision in *Ovitron Corporation v. General Motors Corporation* (S.D.N.Y.1973) 364 F.Supp. 944, *aff'd*, (C.A. 2 1975) 512 F.2d 442 (*Ovitron*). In that case the relevant market was the United States government market for portable squad radios for military use. The Delco Division of General Motors Corporation had developed the radios under contract with the United States government; had performed the Production Engineering Management Contract which required development of detailed specifications, test procedures, construction plans, engineering models, and production models; and had manufactured the first procurement of the squad radios pursuant to a negotiated contract. The contract for the second procurement was awarded to Delco after competitive bidding. The plaintiff Ovitron brought suit under § 2 of the Sherman Act, 15 U.S.C. § 2, alleging that the defendant Delco had made a bid below Delco's cost. The district court specifically found that at trial "plaintiffs established a prima facie case that Delco had monopoly power by reason of its earlier Government contracts which developed the Squad Radio . . ." *Ovitron, supra*, (S.D.N.Y.1973) 364 F.Supp. at 947.

Even more material to the decision on the present motion of Bendix for summary judgment was the earlier ruling of the district court in the *Ovitron* case denying the motion of the defendant Delco for summary judgment. In rejecting the contention of Delco that it did not possess monopoly power, the district court found that it "cannot be said as a matter of law, that under the circumstances of this case, Delco does not possess monopoly power in the relevant squad radio market. The question of whether it does or does not poses issues of fact which require a trial." *Ovitron Corporation v. General Motors Corporation* (S.D.N.Y.1969) 295 F.Supp. 373, l.c. 377.

■ In this action, the facts show that Bendix was awarded the development contract for the APX–72 transponder program in May 1965 by the Naval Research Laboratories (Bendix Pretrial Brief at 2–36; ASI Pretrial Brief at B663); that in June 1966 Bendix received the initial production letter contract for 2,310 APX–72 transponder units on a sole source basis, after negotiation with the Naval Air Systems Command (Bendix Pretrial Brief at 2–63; ASI Pretrial Brief at B349); that in April 1967 the Bendix sole source contract was amended to add 8,577 additional transponder units, and a leader-follower modification added (Bendix Pretrial Brief at 3–18; ASI Pretrial Brief at B362); that the procurement pursuant to the 1968 Request for Proposals was cancelled by the government (Bendix Pretrial Brief at 13–222; ASI Pretrial Brief at B2146); and that no other procurement of APX–72 transponders took place during that period.[1]

The record further shows that Honeywell, Inc. was awarded a contract for 10,973 APX–72 transponders in February 1970 following competitive bidding (Bendix Pretrial Brief at 13–229; ASI Pretrial Brief at B370), and that after soliciting Bendix and Melpar in February 1970, the government awarded to Bendix in April 1970 the interim buy contract for 3,513 APX–72 transponder units (Bendix Pretrial Brief at 13–231, 13–237; ASI Pretrial Brief at B2404, B2425).

After a careful review of the facts shown by the record, the facts alleged by ASI, and inferences which the record warrants, and after analyzing the exceptional structure of the APX–72 market and the conduct of Bendix within that market, it cannot be said, as a matter of law, that Bendix did not possess monopoly power in the APX–72 market. Because Bendix secured the contracts with the government for the development and initial production of the APX–72 transponder and the unique information acquired therefrom, it may be inferred that Bendix possessed the power to control prices or exclude competition in that market. *Ovitron, supra*, (S.D.N.Y.1973) 364 F.Supp. at 947. Therefore, summary judg-

1. Bendix concedes the relevance of transactions prior to May 1967 in determining whether the defendant possessed monopoly power. (Bendix Reply Brief at 6.)

ment in favor of Bendix on Count I is inappropriate at this time.[2]

C. The Question of Attempted Monopolization

 Section 2 of the Sherman Act,. 15 U.S.C. § 2, proscribes attempts to monopolize any part of the trade or commerce of the United States. In order to establish an attempt to monopolize, it is necessary to show overt acts, specific intent to monopolize, and a dangerous probability of success of monopolization of the relevant market. *United States v. Empire Gas Corp.* (C.A. 8 1976) 537 F.2d 296, l.c. 298–299, *cert. denied*, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977); *Agrashell, Inc. v. Hammons Products Co.* (C.A. 8) 479 F.2d 269, l.c. 284, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973).

Solely for the purpose of this motion for summary judgment, Bendix does not contest the issue of whether it had specific intent to monopolize. (Bendix Brief at 10 n.12.) ASI has alleged overt acts which Bendix must accept solely for the purpose of decision on its motion for summary judgment.

 On the issue of attempted monopolization, Bendix bases its motion for summary judgment on the contention that Bendix did not come so close to monopolization of the relevant market as to create a dangerous probability of success. (Bendix Brief at 10–12, Tr. at 8.) Bendix has relied upon statistical data, mostly uncontroverted, and inferences therefrom in its favor to support its contentions on the issue of its coming close to monopolization and the dangerous probability of success. These data and inferences are inadequate to establish that there is no litigable issue of fact.

Therefore, because of the conclusion on the record of the motion for summary judg-

ment that it could be inferred that Bendix had monopolized in violation of § 2 of the Sherman Act, 15 U.S.C. § 2, it can also be inferred that Bendix came dangerously close to monopolizing the relevant market.

### ORDERS

For the foregoing reasons, it is

ORDERED that the oral announcement by this Court at the pretrial conference of August 30, 1979, denying the motion of Bendix for summary judgment on the antitrust count of the complaint of ASI, be, and it is hereby, affirmed and explained. It is further

ORDERED that "Defendant's Motion for Summary Judgment on the Antitrust Count of Plaintiff's Complaint" be, and it is hereby, again denied.

---

**2.** The Eighth Circuit Court of Appeals, in *McLain v. Meier, supra,* (C.A. 8 1979) 612 F.2d at 356, stated that

a district court in passing on a Rule 56 motion performs what amounts to what may be called a negative discretionary function. The court has no discretion to *grant* a motion for summary judgment, but even if the court is convinced that the moving party is entitled to such a judgment the exercise of sound judicial discretion may dictate that the motion should be *denied,* and the case fully developed. [Emphasis in original.]