Harley McLAIN, Appellant,

v.

Ben MEIER, Secretary of State and
Allen Olsen, Attorney
General, Appellees.

No. 79–1115.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 8, 1979.

Decided Dec. 18, 1979.

Harley J. McLain, pro se briefs.

Allen I. Olson, Atty. Gen., and Owen L. Anderson, Asst. Atty. Gen., Bismarck, N. D., on brief, for appellees.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., on supplemental brief, for appellant.

Brian R. Bjella, Asst. Atty. Gen., Bismarck, N. D., on supplemental brief, for appellees.

Before LAY, HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This appeal in a civil rights case is from the United States District Court for the District of North Dakota. At the general election held in that State in November, 1978 plaintiff, Harley McLain, ran unsuccessfully for the position of Representative from North Dakota in the United States House of Representatives (Congressman). He ran as an independent candidate or as the candidate of a nonrecognized political party known as Chemical Farming Banned. He was opposed by nominees of the Democrat and Republican Parties and by another independent, Don J. Klingensmith, who represented an organization known as National Statesman.

The election was held on Tuesday, November 7, 1978. Plaintiff commenced his action pro se the day before the election and sought declaratory and preliminary and permanent injunctive relief. His position was that the form of ballot about to be used in the election discriminated against independent candidates and candidates of small minority parties in violation of the first and fourteenth amendments to the Constitution of the United States. His prayer for a preliminary injunction was motivated by his desire to prevent the holding of the election the next day, at least as far as the office of Congressman was concerned. Federal jurisdiction was predicated on 28 U.S.C. § 1331(a) and on 28 U.S.C. § 1343(3) read in connection with 42 U.S.C. § 1983. The defendants in the case were the Secretary of State of the State of North Dakota, who has substantial responsibilities in the field of state elections, and the Attorney General of that State.

The district court denied preliminary relief, and the election was held. Thereafter, the defendants, hereinafter at times referred to as the State, moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). That motion was supported by a full brief that had attached to it a copy of a voting machine ballot that had been approved by a three-judge district court in Pennsylvania in a case involving the election of some City Councilmen in Philadelphia, the election involved being held in 1969. *Gilhool v. Chairman and Commissioners, Philadelphia County Board of Elections*, 306 F.Supp. 1202 (E.D.Pa.1969), *aff'd on motion*, 397 U.S. 147, 90 S.Ct. 996, 25 L.Ed.2d 182 (1970).

Plaintiff, still proceeding pro se, filed an equally full brief opposing the defense motion. That brief was supported by a copy

of the general election ballot that was used in Cass County (Fargo), North Dakota in 1978 and that was typical of the paper ballots used throughout the State. Also attached to the brief as exhibits were a number of drawings making up a diagrammatical analysis of the ballot designed to show its alleged discrimination against the plaintiff and other independent candidates and small minority parties.

Two days after filing his brief in the district court the plaintiff amended it for the purpose of asserting a claim for both compensatory and punitive damages. Plaintiff also requested that the district court hear oral argument. Plaintiff never sought leave to amend the complaint itself, and that pleading was never amended.

The district court declined to hear oral argument, and on December 28, 1978 filed what amounted to a memorandum opinion summarily dismissing the complaint.

While the ultimate conclusion of the district court is couched in Fed.R.Civ.P. 12(b)(6) terms, that is to say, the district court concluded that the complaint did not state a claim upon which relief could be granted, it is clear that the district court considered material outside the complaint itself and was, therefore, required to treat the motion as one for summary judgment governed by Fed.R.Civ.P. 56. In other words, the district court evidently found that the case presented no genuine issue as to a material fact, and that the defendants were entitled to judgment as a matter of law.

Judgment of dismissal having been entered, plaintiff perfected a pro se appeal and filed a pro se brief. He also filed a pro se reply brief after the State had filed its principal brief. Thereafter, the American Civil Liberties Union (ACLU) entered into the case in support of the plaintiff and was permitted to file on his behalf a supplemental brief; the State was permitted to file a repy to that brief, which it has done, and all of the briefs have been considered. The case has been submitted without oral argument.

We have given careful consideration to the record and we vacate the judgment of the district court on procedural grounds.

## I.

Public elections in North Dakota, as elsewhere, are governed by statute, and the North Dakota laws relative to elections appear in the various subchapters and subdivisions of Chapter 16 of the North Dakota Century Code (N.D.C.C.).[1] We make general reference to that Chapter of the Code; specific references to particular sections will be made as the opinion proceeds.

Like other States, North Dakota has primary, general and special elections. Laying special elections to one side, most North Dakota elections are conducted along political party lines, although there are some elections that specifically are "no-party." The dominant political parties in North Dakota are the Republicans and the Democrats, and North Dakota is generally thought of as a "Republican" state.

The two major parties just mentioned naturally have formal party organizations and are active politically from election to election. The nominees of those parties for offices to be voted on in general elections gain their nominations as the result of party primaries which all recognized political parties in North Dakota are required to hold. The primary elections are held on the first Tuesday in September of each year in which a general election is held. Chapter 16–04–01. And general elections are held on the Tuesday immediately following the first Monday in November of each even numbered year. Chapter 16–06–01.

Only one primary election is held and only one primary ballot is used. All participating parties appear on that ballot and the ballot is arranged in "party columns" running across the ballot from left to right. See in general Chapter 16–04 including

---

1. For convenience, references to "N.D.C.C." will be omitted. It will be understood that statutory references are to that Code.

Chapter 16–04–13, 16–04–15.1, 16–04–16, 16–04–17, and 16–04–20.

The two major parties are automatically assured "party columns" on the primary election ballot. Chapter 16–04–20(1) and (2). A third party which was able in the preceding general election to poll at least 5% of the total number of votes cast for Governor is also entitled to a "party column" on the primary election ballot. Chapter 16–04–20(3). What we will call a "new party" may gain recognition as a party and may secure a column on the primary election ballot if, before June 1 of the year in which the general election is to be held, it files a petition with the Secretary of State asking for a place on the primary ballot. The petition must contain a statement of the platform principles of the new party and must be signed by not less than 15,000 qualified electors. Chapter 16–04–20(4).[2]

A person who desires to run for office in a North Dakota general election and who is not the nominee of a recognized political party within the terms of Chapter 16–04 may have access to the ballot as an independent or as an "individual nomination." Chapter 16–03. In order to have his name placed on the ballot, the independent, who may be the representative of an organized group that is not recognized as a qualifying political party, must file with the Secretary of State, if he is running for a state or district office, not less than forty days before the general election a "certificate of nomination" or petition signed by not less than three hundred qualified electors. Chapter 16–03–02. If the independent so desires, he may have his name followed by a statement of five words or less setting out his "party or principle." *Ibid.*

All certificates of nomination, including party nominees and independent candidates for state or district office (including Congressman) must be filed with the Secretary of State not later than forty days prior to the general election, Chapter 16–05–03; and the Secretary of State, in turn, certifies the nominations to the respective County Auditors, Chapter 16–05–04.

We are concerned here principally with the form and arrangement of the general election ballot, a subject that is dealt with in detail in Chapter 16–11. The form of the ballot is prescribed by chapter. 16–11–05, and we set that section out in full:

The official ballots provided for in this title for partisan election at general elections in precincts in which voting machines are not used shall be prepared as follows:

1. The ballots shall be of sufficient width to contain all of the tickets to be voted for, under the appropriate party designation for each;

2. On the left-hand side of such ballot shall be a column designating the office to be voted for, and on the same line, in the column under the appropriate party designation of each, all of the names of the candidates duly nominated for that office shall be printed;

3. The names of candidates under headings designating each official position shall be alternated on the official ballot in the printing in the same manner as is provided in the primary election ballot;

4. The names of all persons nominated by petition shall be placed in one column under the designation of 'independent nominations' in the lines respectively specifying the offices for which they are nominated; and

5. The size of type shall be as specified by the secretary of state.

In precincts in which voting machines are used, the list of offices and candidates and the statements of measures and questions to be submitted to the voters shall be arranged in a manner and form approximating as far as possible the requirements of this section.

---

2. We are not advised as to whether there is any correlation between the 5% figure mentioned in Chapter 16–04–20(3) and the 15,000 figure mentioned in Chapter 16–04–20(4). Fifteen thousand is, of course, 5% of 300,000.

In 1977 the North Dakota Legislature authorized governmental subdivisions to use a certain type of electronic voting system, and we are told that that system was used in 1978 in Barnes and Morton Counties. See S.L.1977, ch. 190, § 23, Chapter 16–21.1 (Cum.Supp.1977).

Ignoring for a moment the 1977 legislation to which reference has just been made and confining ourselves to conventional paper ballots, we observe at once that the Democrats and the Republicans are given a vested right to "party columns" of their own, and that the party allotted the left hand column will be the party the candidate of which won the last Congressional election.[3] We also observe that the names of the independent candidates are listed one above the other in a single column on the right hand side of the ballot, with the name of an independent candidate being followed by a reference to his party or principle. Further, if there is a "third party" within the meaning of Chapter 16–04–20(3), that party will have a column immediately to the left of the independents and immediately to the right of the Republican or Democrat column depending on which of those parties won the last Congressional election.[4]

## II.

Returning to this particular case, we will say, first that the record made up in the district-court leaves a great deal to be desired with the deficiencies being due obviously to the fact that plaintiff was proceeding pro se, and that by the time at which the district court ruled on the defense motion the 1978 election had been held.

The materials before the district court consisted of nothing but the complaint, the defense motion and the briefs of the parties submitted in connection with the motion plus the exhibits to the briefs that we have described. There were no stipulations as to facts, no factual admissions, no answers to interrogatories, no depositions, and no affidavits. However, it seems safe to say that the following historical facts, as far as they go, are substantially undisputed. And the district judge evidently did not think that he was confronted with any disputed material factual issues.

Plaintiff, Harley McLain, is a citizen and qualified elector of North Dakota. He resides in the small city or town of Eckelson in Barnes County which is immediately west of Cass County where the City of Fargo is located. Plaintiff operates a vegetable farm along the principles of "natural farming," and he is strongly opposed to "chemical farming" which involves the use of manufactured fertilizers and pesticides, including herbicides. Plaintiff, and others of like mind, feel that chemical farming is harmful to people and to the environment generally; they would like to see that type of farming officially prohibited.

At some time prior to June 1, 1978 plaintiff, who had decided to run for Congress, organized some of his fellow "natural farmers" into a political action organization known as "Chemical Farming Banned," and plaintiff caused that organization to be registered with the Federal Election Commission established by the Federal Election Campaigns Act of 1972, as amended, 2 U.S.C. § 431 et seq.[5]

Shortly after June 1 plaintiff, who had become the standard bearer of his "party," advised the Secretary of State that plaintiff desired to run for Congress as the candidate of "Chemical Farming Banned." Plaintiff was told that by that time it was too late for him to qualify his party for ballot position under Chapter 16–04–20(4).[6]

---

3. We might say at this point that North Dakota has only one Congressman, and candidates for that office run on a statewide basis.

4. No "third party" appeared on the 1978 general election ballot. The Republicans won the 1976 election for Congress and were awarded the left hand ballot column; the next column was reserved for the Democrats, and the independent candidates came next.

5. It is not claimed that this registration of "Chemical Farming Banned" gave that organization any standing as a recognized political party in North Dakota.

6. Plaintiff and his group never tried to qualify under Chapter 16–04–20(4), and it is highly doubtful that they could have done so either before or after June 1, 1978.

Plaintiff was further advised, however, that there was still time for him to get on the ballot as an independent candidate under Chapter 16–03 by filing a petition signed by at least three hundred electors, and that he could refer to his party or principle in five words or less. Plaintiff took that route, and his name appeared on the ballot as an independent with the name being followed by the words "Chemical Farming Banned."

At this point we call attention to the fact that June 1, 1978, the cutoff date for party qualification under Chapter 16–04–20(4), was 159 days prior to the date of the general election on November 7, 1978. Further, had "Chemical Farming Banned" been able to present to the Secretary of State prior to June 1 petitions signed by 15,000 or more qualified electors, the party would still have been required to hold a primary election, Chapter 16–04–01, and probably to have complied with the party organizational requirements spelled out in Chapter 16–17. On the other hand, plaintiff could qualify as an independent candidate down to September 28, 1978 and could have the name of his party or his statement of party principle appear on the ballot. And this he did, as has been seen.

In order for the reader to have a visual impression of the ballots in question, we set out in Appendix I to this opinion, as a typical general election ballot, the top part of the ballot that was used in Cass County and in most of the other counties of the State; and we set out as Appendix II the somewhat different form of ballot that was used in Barnes and Morton Counties.[7] As to that form, we are told by counsel for the State that voting machines authorized by the 1977 legislation to which we have referred were used in Barnes and Morton Counties, and that some changes in ballot forms had to be made. It will be observed, however, that the only real difference be-tween the ballot shown in Appendix I and the ballot shown in Appendix II is that on the Appendix II ballot the candidates are listed vertically rather than horizontally; but, the Republican and the Democrat candidates are given respectively the first and second places on the ballot rather than the left hand horizontal column and the one immediately to the right of it. The name of plaintiff and the name of Mr. Klingensmith appeared on the Appendix II ballot in the same order as that in which they appeared on the Appendix I ballot; the only difference is that their names are under rather than at the side of the names of the major party candidates.

The election was duly held, and 220,348 votes for Congressman were cast, or so we are told. The plaintiff received 3197 or about 1.5% of the votes over the State as a whole. We are not advised as to how many votes Klingensmith received. Plaintiff ran best in his home county of Barnes where he obtained about 3% of the votes, and he did worst in Golden Valley County where he got less than 1% of the votes.[8]

### III.

In the district court the plaintiff did not in terms attack the validity of Chapter 16–04–20; his case, as he put it before the district judge, was an attack upon Chapter 16–11–05. We observe, however, that the plaintiff did allege not only that he personally was the victim of discrimination but also that small minority parties were the subject of the same type of discrimination.

In support of their motion the defendants advanced several contentions: (1) that the case was "political" and did not present a justiciable case or controversy under Article III of the Constitution; (2) that the suit was one against the State and was barred by the eleventh amendment; (3)

---

7. It will be observed that the items reproduced are only partial ballots.

8. The figures and percentages given are based upon statements appearing in the briefs of the parties. While we do not question the abstract truth of the statements made, we do call atten-tion to the fact that it would have been easy for either side and particularly for the State to have established those figures and percentages and other relevant statistical data by materials rising to evidentiary stature.

that the complaint of the plaintiff was so lacking in merit that plaintiff's pleading failed to state a claim upon which relief could be granted.

The district court held that the State's first and second contentions were without merit, and the court also held that the fact that the election had been held did not render the controversy moot. In those holdings the district court was clearly correct, and we need say no more about them. *See* this court's discussion in *MacBride v. Exon*, 558 F.2d 443, 446–48 (8th Cir. 1977), and authorities cited therein.

As to the final contention of the defendants, the district court, without considering the validity of Chapter 16–04–20, held ultimately that the general election ballot arrangement mandated by Chapter 16–11–05 was a permissible exercise by the State of its discretion in the matter of elections, including Congressional elections, and that it did not discriminate against independent candidates or small parties the candidates of which reached the ballot by means of individual nominations.

The position of the plaintiff in the district court was perhaps obscured to some extent by his contention that he was a "party candidate," which he was not, and by certain misstatements that were not particularly important and were rather transparent. Plaintiff undertook to draw an analogy between a political ballot and a piece of commercial advertising material, and he argued at considerable length that the overall format of the ballot, and its emphasis from the standpoint of type and spacing, were deliberately designed to favor the two major parties to the detriment of independents and representatives of minority parties. In connection with his appeal plaintiff while still proceeding pro se, advanced essentially the same arguments that he had made in the district court.

After the ACLU came into the case, its counsel found themselves unable to go along with all of the details of the argument advanced by plaintiff himself. The position of plaintiff, as expressed by ACLU, is that the complaint involved the constitu-

tional validity not only of Chapter 16–11–05 but also the validity of Chapter 16–04–20, and that both of those statutory provisions are unconstitutional.

As to Chapter 16–04–20(4), ACLU's position is that it is rendered invalid both by the 15,000 signature requirement and by the fact that the petitions for recognition must be filed more than five months before the general election, plus the fact that a "new party" is required to hold a primary election.

With respect to Chapter 16–11–05, ACLU contends that under the terms of that statute an independent candidate is inevitably consigned to an inferior ballot position, and that the dominant "incumbent" major party is automatically given the most favorable ballot spot with its runnerup in the last general election occupying the next favored position.

In its supplemental brief the State contends that the validity of Chapter 16–04–20 was not a question that was before the district court and should not be considered here, and, alternatively, that in any event both Chapter 16–04–20 and Chapter 16–11–05 are constitutional as a matter of law.

IV.

While the district court wound up its opinion by saying that the complaint did not state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), the court said in the body of its opinion that the facts in the case were not in dispute, and we assume that the court found to the requisite degree of certainty that the case presented no genuine issue as to any material fact and that the State was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(b). The parties seem to have so treated the holding of the district court.

The standards applicable to a Rule 56 motion are so familiar in this circuit and elsewhere that it is becoming tedious to repeat them. Summary judgment is a harsh remedy and is to be granted sparingly; the burden is on the movant to show

that he is entitled to the judgment sought. The case is to be viewed in the light most favorable to the party opposing the motion, and he is to be granted the benefit of all inferences favorable to him that the record warrants. Those and other principles are adequately stated in cases like *Starling v. Valmac Industries, Inc.*, 589 F.2d 382 (8th Cir. 1979); *Watts v. Brewer, Warden*, 588 F.2d 646 (8th Cir. 1978); *Bellflower v. Pennise*, 548 F.2d 776 (8th Cir. 1977); *Windsor v. Bethesda General Hospital*, 523 F.2d 891 (8th Cir. 1975).

■ In a civil rights case a pleading prepared by a litigant pro se is to be construed liberally in his favor. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Anderson v. Sixth Judicial District Court*, 521 F.2d 420 (8th Cir. 1975); *Cruz v. Cardwell*, 486 F.2d 550, 551–52 (8th Cir. 1973).

■ Returning to a motion for summary judgment as opposed to a motion attacking the sufficiency of a pleading as such, a district court in passing on a Rule 56 motion performs what amounts to what may be called a negative discretionary function. The court has no discretion to *grant* a motion for summary judgment, but even if the court is convinced that the moving party is entitled to such a judgment the exercise of sound judicial discretion may dictate that the motion should be *denied*, and the case fully developed.

· That point was made many years ago by the late Judge Harry J. Lemley [9] in a paper that he read before the Judicial Conference of this Circuit in 1957 and that is reprinted as "Summary Judgment Procedure Under Rule 56 of the Federal Rules of Civil Procedure—Its Use and Abuse," 11 Ark.L.Rev. 138 (1957). More recently, we have so held in *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 211 (8th Cir. 1976). *See also* 10 C. Wright & A. Miller,

Federal Practice & Procedure, § 2728, pp. 552 *et seq.*

## V.

■ With the case viewed in the light of the principles above stated, we think that the complaint of the plaintiff aided by his brief in the district court was sufficient to draw into question in that court the constitutional validity of both Chapter 16–04–20 and Chapter 16–11–05.

■ The validity of each of those statutes is at the least suspect in view of the teachings of *MacBride, supra*, and similar cases.

We decline to explore that question further at this time. We are satisfied that in the overall circumstances of the case the district court erred in disposing of the case summarily on the basis of the record before it, and that the district court's judgment cannot stand.

At this point we are met with a problem of time. The 1978 election is more than a year past, and the 1980 election is less than a year away. North Dakota state and party officials and other interested parties are entitled to know as soon as possible what kind of ballot will be permissible in the 1980 general election. It is possible that further legislative action may be required should it be held ultimately that the existing form of ballot is unconstitutional. *Cf. Welsch v. Likins*, 550 F.2d 1122, 1132–33 (8th Cir. 1977).

We vacate the judgment of the district court and remand the case with the following directions. The district court should permit a clarifying amendment to the complaint to be filed within a limited period of time. Should no amendment be filed within the period, the original complaint should be dismissed with prejudice as far as Mr. McLain is concerned, but without prejudice to the rights of any other parties desiring to attack the statutes in question.

---

**9.** Between 1939 and his retirement in 1958 Judge Lemley was United States District Judge for the Eastern and Western Districts of Arkansas, and was Chief Judge of the Western District.

Should the complaint be amended within the time prescribed, the district court should proceed to have the facts developed and to decide the case with all convenient speed. The district court should insist on the cooperation of counsel to that end, and we have no reason to believe that such cooperation will not be forthcoming.

Vacated and remanded. We award no costs.

## APPENDIX I.

CASS COUNTY

# GENERAL ELECTION BALLOT

To vote for a person whose name is printed on the ballot mark a cross (X) in the square at the right of the name of the person for whom you desire to vote. To vote for a person whose name is not printed on the ballot write or paste his name in the blank space provided for that purpose.

| NAME OF OFFICE | REPUBLICAN | DEMOCRAT | INDEPENDENT NOMINATIONS |
|---|---|---|---|
| REPRESENTATIVE IN CONGRESS Vote for (ONE) Name Only | MARK ANDREWS ☐ ☐ ☐ | BRUCE HAGEN ☐ ☐ ☐ | HARLEY J. McLAIN (Chemical Farming Banned) ☐ <br> DON J. KLINGENSMITH (National Statesman) ☐ <br> ☐ |
| STATE SENATOR 13th DISTRICT Vote for (ONE) Name Only | CLAYTON A. LODOEN ☐ ☐ | RAY METZGER ☐ ☐ | ☐ ☐ |
| MEMBERS HOUSE OF REPRESENTATIVES 13th DISTRICT Vote for (TWO) Names Only | DANNY OLSON ☐ <br> FLORENZ BJORNSON ☐ <br> ☐ | ROY T. KRAJECK ☐ <br> L.E. BERGER ☐ <br> ☐ | ☐ ☐ |
| PUBLIC SERVICE COMMISSIONER Vote for (ONE) Name Only | RICHARD "Dick" ELKIN ☐ ☐ | ROBERT E. "BOB" HANSON ☐ ☐ | ☐ ☐ |

APPENDIX II

# PARTY BALLOT

| | | |
|---|---|---|
| **REPRESENTATIVE IN CONGRESS** | MARK ANDREWS <br> Republican | 2 → |
| | BRUCE HAGEN <br> Democrat | 4 → |
| **Vote for ONE** | HARLEY J. McLAIN <br> (Chemical Farming Banned) | 6 → |
| | DON J. KLINGENSMITH <br> (National Statesman) | 8 → |
| **MEMBERS OF HOUSE OF REPRESENTATIVES** | DON BERGE <br> Republican | 10 → |
| | FRANK LARSON <br> Republican | 12 → |
| **24TH DISTRICT** | DEAN HORGAN <br> Democrat | 14 → |
| **Vote for TWO** | RALPH WINGE <br> Democrat | 16 → |
| **PUBLIC SERVICE COMMISSIONER** | RICHARD "Dick" ELKIN <br> Republican | 18 → |
| | ROBERT E. "Bob" HANSON <br> Democrat | 19 → |
| **Vote for ONE** | | |