Neil I. SUNDQUIST, Plaintiff,

v.

AMERICAN HOIST AND DERRICK, INC., and United Steelworkers of America, Defendants.

Civ. No. 4–81–608.

United States District Court, D. Minnesota, Fourth Division.

Dec. 30, 1982.

Michael J. McNamara, Minneapolis, Minn., for plaintiff.

Mark T. Solstad and William S. Seeley, Johnson & Eastlund, Minneapolis, Minn., for defendant American Hoist and Derrick, Inc.

John G. Engberg and Richard L. Kaspari, Peterson, Engberg & Peterson, Minneapolis, Minn., for defendant United Steelworkers of America.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on cross motions for summary judgment. For the reasons stated below, the Court will grant the defendants' motions for summary judgment.

### FACTS

Plaintiff Neil I. Sundquist (Sundquist), a Minnesota resident, was employed by defendant American Hoist and Derrick, Inc. (the Company) in its plant in Duluth, Minnesota from April, 1977, to January 4, 1980. The Company, a Delaware corporation doing business in Minnesota, discharged Sundquist after he allegedly intimidated a Company supervisor. Sundquist, who denies he intimidated the supervisor, claims he merely confronted the supervisor after he witnessed the supervisor committing a safety violation. The Company contends Sundquist was discharged because he had two prior disciplinary infractions of a similar nature within the previous six months. The Company claims Sundquist was properly discharged under the collective bargaining agreement dated April 4, 1979 (the Agreement) which was in force at the time of Sundquist's discharge.

According to defendant United Steelworkers of America (the Union), Steve Peterson (Peterson), the president of Local Union 8494, began an investigation of the case on January 4, 1980, the day Sundquist was discharged. On January 7, 1980, Peterson and Bruce Verbick (Verbick), the Union vice president, met with Sundquist to discuss his discharge. The Union claims Peterson and Verbick reviewed reported arbitration decisions and discussed the merits of the case with Sundquist. Although the Union officials claim they thought Sundquist had a weak case, the Union agreed to pursue the grievance through the three pre-ar-

bitral steps of the established grievance procedure.[1]

The Union claims it represented Sundquist at each of the three steps until Jay Henningsgard, the plant personnel manager, denied Sundquist's grievance in a memo to Sundquist and the Union dated February 12, 1980. Although it is unclear whether Sundquist received a copy of this memo, Sundquist has not contested the Union's claim that he was informed by Peterson on approximately the same date that the Union did not intend to pursue his grievance to arbitration, the next stage in the grievance procedure.[2]

Sundquist filed a charge against the Company with the National Labor Relations Board (NLRB) sometime after the Union refused to proceed with the arbitration of his grievance. In a letter dated April 2, 1980, the NLRB regional director informed Sundquist that the NLRB refused to issue a complaint because there was insufficient evidence that the Company discharged him because of his Union affiliation or other protected activities.

Sundquist commenced the present suit on September 17, 1981. He alleges the Company wrongfully discharged him in violation of the Agreement. Among other things, he claims the Company improperly accused him of intimidating supervisors. In addition, he accuses the Company of basing its decision to discharge him solely on hearsay evidence. Sundquist accuses the defendant Union of failing to represent him adequately in his labor dispute with the Company. He claims the Union provided him with unskilled mediators who failed to give him a copy of or explain the grievance procedures in the Agreement. In addition, Sundquist alleges the Union failed in its duty to represent him because it refused to proceed to arbitration. Sundquist seeks back wages, reinstatement, and punitive damages. Both defendants deny they breached any duty owed the plaintiff.

The defendant Union and Company have moved for dismissal for failure to state a claim or, alternatively, for summary judgment. The defendants contend Sundquist's suit is barred by the statute of limitations. The Union also claims Sundquist's suit

1. The three pre-arbitral steps are set forth in Article IV, Section 6.1, of the Collective Bargaining Agreement (Agreement), which provides as follows:

Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise in the plant, there shall be no suspension of work on account of such grievance, but an earnest effort shall be made to settle such differences immediately in the following manner:

Step 1: The employee, with or without his Committee Representative present, shall first discuss any alleged grievance with the immediate supervisor.

Step 2: After ten (10) working days, if the employee is not satisfied, the matter shall be presented as a written grievance in a meeting with the Chairperson of the Grievance Committee, the involved Committee Representative, a representative of the Company and the employee involved. Within ten (10) working days of the Step 2 meeting, the Company shall provide a written answer setting forth its position.

Step 3: After an additional ten (10) working days, if the matter is not resolved, it shall be taken up between an International Representative of the Union, the Shop Committee and the General Manager of the plant. Within ten (10) working days of the Step 3 meeting, the Company shall provide a written answer setting forth its final position on the grievance.

2. The arbitration procedure is set out in Article VI, Section 6.2, of the Agreement, which provides in part as follows:

Grievances not satisfactorily settled in the above Steps may be taken by either party to arbitration. Notice of such intent must be given to the other party within fifteen (15) working days after the written reply is received from the General Manager as provided in Step 3 above. The parties shall meet for the purpose of selecting an arbitrator by mutual agreement. If they shall fail to agree, the selection of the arbitrator will be left to the American Arbitration Association who shall then submit a list of arbitrators in accordance with its rules. If the parties cannot agree on one of the names on any of three lists submitted for approval, the Association will thereafter have the right and responsibility to select the arbitrator. The decision of this arbitrator shall be final and binding upon all parties. . . .

against it is barred by the plaintiff's failure to exhaust internal Union remedies before initiating suit. In addition, the Union asserts that the plaintiff has failed to allege sufficient facts to support a claim that the Union breached its duty of fair representation.

The plaintiff denies his suit is barred by the statute of limitations. He also claims the Union procedures were so ambiguous that he had no duty to pursue further internal Union remedies. Finally, he asserts that he, not the defendants, is entitled to summary judgment.

DISCUSSION

In evaluating a motion for summary judgment, a court must deny the motion unless the pleadings, stipulations, affidavits, and other evidence demonstrate that no material issues of fact remain unresolved. Fed.R.Civ.P. 56(c). The United States Court of Appeals for the Eighth Circuit has repeatedly stated that summary judgment is an extreme remedy that should not be granted "unless the movant has established its right to a judgment with ... clarity ... and unless the other party is not entitled to recover under any discernible circumstances." *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). A court must view the facts in the light most favorable to the nonmovant and grant that party the benefit of all reasonable inferences. *McLain v. Meier,* 612 F.2d 349, 356 (8th Cir.1979).

 The plaintiff's claim of wrongful discharge against the Company is based upon section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). The plaintiff also alleges the Union failed to use to the fullest extent possible the employees' remedies under the collective bargaining agreement, thereby breaching the Union's duty of fair representation. This duty is an independent statutory duty that arises from the Union's role as an exclusive bargaining agent under sections 8 and 9 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b), 159(a); *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Claims for breach of this duty may arise when a union either refuses to process or perfunctorily processes an employee's claim against the employer. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). Judicial review is limited to cases in which a union is alleged to have acted in bad faith or arbitrarily. *Id.* at 564, 96 S.Ct. at 1056. Although the plaintiff's claim against the Company is based upon the Agreement, the plaintiff, in order to prevail against either the Union or the Company, must show that his discharge was not only contrary to the Agreement but also that the Union breached its duty of fair representation. Thus, the plaintiff's claim against the Company is dependent upon establishing a claim against the Union. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

The threshold issue before the Court is whether the plaintiff's claims are barred by the statute of limitations. The plaintiff filed suit 21 months after his discharge, 20 months after the Union informed him it would not process his grievance to arbitration, and 17 months after the NLRB informed him it saw no merit to his allegations. The Court must decide which statute of limitations applies and whether the same period applies to both defendants.

Both the Union and the Company contend that the appropriate statute of limitations is either the 90-day period established for vacating arbitration awards under Minnesota law, Minn.Stat. § 572.19, subd. 2, or the six-month period established in section 10(b) of the NLRA, 29 U.S.C. § 160(b). The plaintiff contends, however, that the appropriate statute of limitations is the six-year period for contract suits, Minn.Stat. § 541.05, or the two-year period for claims for back wages, Minn.Stat. § 541.07. The plaintiff also claims that even if the six-month period set forth in section 10(b) of the NLRA is applicable, he has met its requirements by filing a charge within six months of his discharge.

Although the United States Supreme Court has yet to rule on the precise issues[3] presented in this case, the Court finds that the plaintiff's action is time-barred under either the analogous state statute or the federal statute. Congress has not enacted a statute of limitations governing suits brought pursuant to section 301. The United States Supreme Court noted in *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966), "the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." (Footnote omitted). The Supreme Court in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), held that New York's 90-day statute of limitations for vacating arbitration awards applied to an employee's suit seeking to overturn the decision of an arbitration panel established in a collective bargaining agreement. The Supreme Court stated that an action for breach of the duty of fair representation is more analogous to an action to vacate an arbitration award than an action for breach of contract. Although the plaintiff employee in *Mitchell* sued both his employer and union, only the employer appealed the lower court's decision. In the present case, however, both the Union and the Company have moved for summary judgment.[4]

In *Mitchell* the Supreme Court expressly reserved the question of whether the federal statute of limitations set forth in section 10(b) of the NLRA might be applicable in some cases. The Supreme Court declined to consider the issue since it was not raised by either of the parties at any time but was raised by an amicus on appeal. 451 U.S. at 60 n. 2, 101 S.Ct. at 1562 n. 2. The Supreme Court limited its review to determining which of two state periods was the most appropriate.

Since *Mitchell*, courts have taken conflicting positions over whether state or federal statutes of limitations apply and if state statutes apply, which statute is the most appropriate. In *Aarsvold v. Greyhound Lines, Inc.*, 545 F.Supp. 622 (D.Minn.1982), *appeal docketed*, No. 82–1695 (8th Cir. June 11, 1982), the Court held that Minnesota's 90-day period for vacating arbitration awards, Minn.Stat. § 572.19, subd. 2, applied to a case analogous to the present case. In *Aarsvold*, like the present case, the union failed to submit the plaintiffs' grievances to arbitration. The Court held that, even though the plaintiff's case in *Mitchell* had been ruled upon by an arbitration panel, *Mitchell's* holding also applied to cases in which the grievance process ended before reaching arbitration. *Aarsvold*, 545 F.Supp. at 624. The Court noted that since the plaintiffs raised the same claims as they raised in their grievances and sought the same remedies, their action had the essential earmarks of a suit to vacate an arbitration award. *Id.* n. 1. The Court stated, "it must be remembered that actions for breach of the duty of fair representation

---

**3.** The United States Supreme Court on November 29, 1982, granted a petition for a writ of certiorari in *Flowers v. Local 2602, United Steel Workers of America*, 671 F.2d 87 (2d Cir.1982). In *Flowers* the court held that New York's 90-day statute of limitations for actions to vacate arbitrations applied to an employee's section 301 suit against his or her employer but that New York's three-year statute of limitations for nonmedical malpractice actions applied to an employee's suit against his or her union.

**4.** Justice Stevens in his *Mitchell* opinion (concurring in part and dissenting in part) questioned whether an employee's action against his or her union can be characterized as a motion to vacate an arbitration award. Justice Stevens said that an employee's claims against

an employer and union are conceptually distinct since the primary issue between a union and an employee—the duty of fair representation—is never determined by the arbitration process. *See also Flowers v. Local 2602, United Steel Workers of America*, 671 F.2d 87 (2d Cir.1982) (relying upon Justice Stevens' opinion to hold an employee's claim against his or her union cannot be characterized as an attempt to vacate an arbitration award).

This Court, like the *Mitchell* majority, is not persuaded by Justice Stevens' argument. The *Mitchell* majority repeatedly notes the interrelationship between an employee's cause of action against his or her employer and that against his or her union. 451 U.S. at 62–63, 101 S.Ct. at 1563–64.

are attempts to override the grievance machinery established in the collective bargaining agreement." *Id.* at 623.[5]

Other federal courts, while agreeing with the *Aarsvold* opinion that a state statute of limitations applies to section 301 suits, have disagreed over which state statute applies and over whether the same limitations period applies to both employers and unions. For example, the United States Court of Appeals for the Second Circuit has held that a 90-day limitations period for vacating arbitration awards applies to a section 301 suit against an employer but a three-year period for malpractice actions applies to a suit against a union. *Flowers v. Local 2602, United Steel Workers of America,* 671 F.2d 87 (2d Cir.1982). *See also Edwards v. Sea-Land Services, Inc.,* 678 F.2d 1276 (5th Cir. 1982) (applying state's four-year general catch-all period to section 301 suit against the employer and two-year period for tort actions against the union). The Court does not find either of these cases apposite. The court in *Flowers* based its decision on Justice Stevens' dissent in *Mitchell* in the face of what it admitted was opposing dicta in *Mitchell's* majority opinion. *Flowers,* 671 F.2d at 90. The statute in *Edwards* concerning the vacation of arbitration awards contained an explicit exclusion for actions

involving collective bargaining awards. Minnesota's statute does not contain such an exclusion. In addition, the application of different limitations periods to an employer and a union conflicts with the Eighth Circuit's holding in *Butler v. Local Union 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America,* 514 F.2d 442 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). In *Butler* the Eighth Circuit held that the same limitations period applies to both claims against an employer and union in a section 301 suit that alleges breach of a collective bargaining agreement in conjunction with breach of a duty of fair representation. *Id.* at 448. Thus, neither *Flowers* nor *Edwards* compels the Court to reexamine its holding in *Aarsvold.*[6]

Some courts have applied a federal statute of limitations as suggested by the defendants. For example, in *Kaftantzis v. D & L Transport Co.,* 531 F.Supp. 566 (N.D.Ill. 1982), the court held that a section 301 case similar to the present one was governed by the federal six-month limitations period provided in section 10(b) of the NLRA. The court distinguished *Hoosier Cardinal* which involved a suit to enforce a contract

5. *But see Gustafson v. The Cornelius Company and The United Steel Workers of America,* No. 3–81–620, slip op. (D.Minn. January 6, 1982), *appeal docketed,* No. 82–1199 (8th Cir. Feb. 10, 1982) (holding that an employee's section 301 suit against his employer and union was barred by the two-year limitations period for recovery of wages or damages accruing under federal or state law *respecting payment of wages or damages,* Minn.Stat. § 541.07, subd. 5). The Court in *Gustafson* makes no mention of the applicability of Minn.Stat. § 572.19, subd. 2. The result in *Aarsvold* is not necessarily inconsistent with that in *Gustafson* since the issue of the applicability of Minn.Stat. § 572.19, subd. 2 may not have been before the Court in *Gustafson* or may not have been necessary to its decision since the plaintiff's action would be barred under both Minn.Stat. § 541.-07, subd. 5, and the shorter Minn.Stat. § 572.-19, subd. 2.

6. The plaintiff's reliance on *Newton v. Local 801 Frigidaire Local International Union of Electrical Workers,* 684 F.2d 401 (6th Cir.1982) and *Washington v. Northland Marine Co., Inc.,* 681 F.2d 582 (9th Cir.1982) is also misplaced.

In *Newton* the court only had before it a choice between a six-year period for statutory liabilities and a 15-year period for contract actions. No statute comparable to Minn.Stat. § 572.19, subd. 2 was before the court. In selecting the shorter six-year period, the court noted that a leading federal labor policy was "the relatively rapid disposition of labor disputes." 684 F.2d at 404, *quoting Mitchell,* 451 U.S. at 63, 101 S.Ct. at 1564. The court further noted that its ruling was not inconsistent with its earlier holding that the six-month period established in § 10(b) of the NLRA, 29 U.S.C. § 160(b), applied since the plaintiff's suit was barred under either the six-year or six-month period.

The ruling in *Washington* conflicts with that in *Aarsvold* because the court in *Washington* held that the limitations period applicable to vacation of arbitration awards was not binding in actions in which the grievance process stopped short of arbitration. The court in *Washington* reasoned that "finality" was lacking. This reasoning is not persuasive for the reasons stated in *Aarsvold,* 545 F.Supp. at 624.

provision by a union against an employer and the suit before it which was brought by an employee against his employer and union. The former suit, the court stated, was more like a private contract suit and thus a state statute of limitations was appropriate. The latter suit, the court said, was based on the duty of fair representation which was a right derived from the NLRA. Since a breach of this duty is considered an unfair labor practice by the NLRB, the court stated that the appropriate limitations period was that provided in section 10(b) of the NLRA. 531 F.Supp. at 569. The court reasoned that the section 10(b) period more accurately reflected Congressional judgment "as to the appropriate balance between an employee's interest in vindicating his rights and the overall interest in industrial peace and attaining some measure of finality in the arbitral process" than does a state statute. *Id.* (citations omitted). The *Kaftantzis* court essentially adopted the position set forth in Justice Stewart's concurring opinion in *Mitchell*.

Under either the *Aarsvold* or *Kaftantzis* rulings the plaintiff's action in the present case is barred. Although the Court believes that the correct statute of limitations is the 90-day statute adopted in *Aarsvold* and thus the plaintiff's action is barred, the Court finds that the plaintiff's action is also barred under the six-month statute set forth in section 10(b) of the NLRA.

■ The Court believes that the 90-day statute of limitations is applicable to both employers and unions under *Mitchell's* rationale. The main reason for extending *Mitchell's* holding to unions as well as employers is the nature of the relationship between the causes of action against the two parties. In *Mitchell* the majority noted that for an employee to prevail in a wrongful discharge suit in which a grievance has reached final arbitration, the employee must do more than prove the discharge was in violation of the collective bargaining agreement. To prevail against the employer, the employee must attack the arbitration process itself and demonstrate that the process was defective because the union

breached its duty of fair representation. 451 U.S. at 62, 101 S.Ct. at 1563. Thus an indispensible element of the employee's case against the employer is a showing that the union breached its duty. In addition, it is both illogical and unnecessarily cumbersome to give employees a longer period in which to sue their unions for breach of a duty that provides the basis for suits against their employers than the period in which they must sue their employers. A uniform limitations period would more effectively promote the long-recognized goals of labor legislation—providing stability and rapid resolution of disputes, as well as upholding the collective bargaining process. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 561–564, 96 S.Ct. 1048, 1054–56, 47 L.Ed.2d 231 (1976).

The plaintiff argues that if the section 10(b) limitations period is adopted he has satisfied its requirements. The facts refute this contention. The plaintiff filed a charge with the NLRB within the six-month period, but he did not file a complaint until 17 months after the NLRB determined it would not process his charge further. The relevant time period is the filing of a complaint not the filing of a charge with the NLRB because such a filing is not a prerequisite to a section 301 suit. The policies of labor legislation—stability and rapid settlement of disputes—would be undermined if a plaintiff could satisfy the limitations period by merely filing a charge with the NLRB and then wait years before filing a suit.

Because the Court's decision concerning the threshold issue of the applicable statute of limitations fully disposes of the case, the Court does not need to reach the other issues raised by the parties.

Accordingly, IT IS ORDERED that:

1. the plaintiff's motion for summary judgment is hereby denied; and

2. the defendants' motions for summary judgment are hereby granted and judgment shall be entered in their favor.

LET JUDGMENT BE ENTERED ACCORDINGLY.