**Pam KROLIKOWSKI, Plaintiff,**

v.

**RICHMAN GORDMAN ½ PRICE STORES, INC., Defendant.**

**No. 4:97CV3370.**

United States District Court,
D. Nebraska.

Feb. 3, 1999.

Vincent M. Powers, Lincoln, NE, for plaintiff.

Randy J. Stevenson, Christopher R. Hedican, Baird, Holm Law Firm, Omaha, NE, for defendant.

**MEMORANDUM AND ORDER**

KOPF, District Judge.

Pending before the court is Defendant's motion for summary judgment (filing 13). After consideration of Defendant's motion and the evidence submitted in support of and in opposition to the motion, the court finds summary judgment should be granted and Plaintiff's complaint will be dismissed.

## BACKGROUND

This is a pregnancy discrimination action pursuant to the Pregnancy Discrimination Act of 1978, (PDA), 42 U.S.C. § 2000e(k). Plaintiff Krolikowski (Krolikowski) was pregnant at the time she was terminated from her employment for violating a store policy regarding purchases of merchandise by store employees. Krolikowski claims RG overlooked the same conduct by store managers and other nonpregnant employees. Krolikowski claims the random enforcement of the employee merchandise purchase policy is actually a pretext for discrimination.

The following undisputed facts are found in the briefs of the parties:

1. Pam Krolikowski ("Krolikowski") was employed by Richman Gordman½ Price Stores, Inc. ("RG") in its Lincoln, Nebraska store. She is female and was pregnant at the time of her termination. (Complaint ¶¶ 6 & 11.) [1]

2. RG has specific policies regarding how its employees may purchase, layaway and store company merchandise which the employees intend to purchase. Generally, employees may not store or hide any merchandise they have purchased or intend to purchase in their locker or in the stockroom. The purpose of the policy is to prevent theft and removal of product from the sales floor, where a customer could purchase it. (43:6–13; Ex. 4; Vol. II 16:1–9; Ex. B).[2]

3. Specifically, the policies ("Employee Purchase Policies") provide as follows:

During a recent time period we have found merchandise stashed in the stockroom. All full time employees were warned verbally that this is not acceptable and is in contradiction to our employee purchase policy. The only exception is to ask a merchandise manager if they will hold something until the next pay period in their office. This statement was also written on the notice board in the breakroom and left there for two weeks with the added comment if you have any questions about this policy or any other please see your supervisor. (Ex. 4).

All employee purchases must be made prior to, or after your shift. The purchase must be taken immediately to your car, out the *front doors*.

Employees will not be allowed to keep purchases in the locker room or office. Employees must not exit the back doors when a purchase has been made. (Ex. 3).

4. Jennifer Metzger ("Metzger") was employed by RG at the same store as Krolikowski. Metzger was terminated by RG because she did not pay for pantyhose she had taken from the shelf at the store. Metzger was not pregnant when terminated. (37:17–34:24). Metzger admitted having violated the Employee Purchase Policies. (39:22–40:5).

5. Krolikowski also knows Christine Spangler ("Spangler") who was employed by RG at the same store as Krolikowski. Spangler was terminated by RG for the same reason as Metzger. Spangler was not pregnant at the time of her termination. (40:14–41:8).

6. Metzger and Spangler were terminated in May of 1996. (104:14–25; Affidavit of Hester; Ex. F & G).

7. Krolikowski understood that it was store policy that employees must pay for items they took from the shelves. (40:13–17).

8. Following Metzger and Spangler's termination, RG management held meetings with all of the store employees and discussed the Employee Purchase Policies in Exhibits 3 & 4, including hiding of merchandise in the stock room for purchase by

---

1. Transcript page references are to Krolikowski's deposition only. The transcript is contained in Exhibit A of the Index of Evidence.

2. There are two volumes to Krolikowski's deposition, and "Vol. II" refers to the second part.

employees. The policies were posted in the break room by the time clock (Ex. 3) and on the notice board (Ex. 4). (Affidavit of Hester).

9. RG held the meetings to ensure that all employees understood that there was no tolerance for breach of the Employee Purchase Policies and that employees would be terminated if they violated the policies. (Affidavit of Hester.)

10. Krolikowski admits that she had seen Exhibit 3 posted at work in the summer of 1996. (107:23–108:7). Krolikowski was present in the meetings regarding the Employee Purchase Policies. (Affidavit of Hester; 107:11–20).

11. At the time of her termination, Krolikowski was supervised by Julie Busekist. Busekist first learned of Krolikowski's pregnancy in the summer of 1996. She was excited and happy for Krolikowski. (76:1–8; 77:6–24).

12. Busekist, Diane Cooper and Becky Yetter (all members of RG management) asked Krolikowski how she was feeling and how she was doing with the pregnancy. (79:5–14). Krolikowski admits that the store manager, Jim Hester, who ultimately terminated her, only spoke about her pregnancy once. Specifically, he congratulated her on the pregnancy and expressed hope that it would go well. (82:17–83:2).

13. Krolikowski understood that it was store policy that employees could not store merchandise in the stock room. (43:6–13).

14. In September 1996, Krolikowski hid store merchandise in the stockroom, which she had not purchased. The items included several toys, clothing and other merchandise. (112:1–25). Krolikowski admits that she violated the Employee Purchase Policies by concealing the merchandise in the stock room. (113:5–17). She further agrees that her actions violated the express terms of the policy as stated in Exhibit 4. (Vol.II:16:1–9).

15. Krolikowski met with an RG employee from RG's Asset Protection department the day she was terminated. That person explained that he was talking to Krolikowski because the company believed that she had violated company policy regarding hiding of merchandise, since RG found items in the stock room that management believed Krolikowski had put there. Krolikowski admitted that she had. (110:18–111:15). Krolikowski prepared a statement admitting that she had violated the policy. (113:20–114:9; Ex. 7, Krolikowski Statement).

16. After conceding her violation of the policy, the store manager, Jim Hester, informed her that she was terminated for violating the policy. (117:11–118:14).

17. At the time Krolikowski was terminated by RG, she understood that employees were not permitted to hid merchandise in the store room, but rather she had to get permission from management to store it in the manager's office. (108:21–109:12).

18. Although Krolikowski contends that coworkers Michelle Page, Lori Clark, Amy Qualset, and Tara Svik violated the same policy she did and were not terminated by RG, Krolikowski has no evidence that anyone in management of RG knew that these persons had violated the rule. (124:1–128:11;129:4–25). Krolikowski has no evidence that Hester knew that anyone else had hidden merchandise in the stock room in violation of the policy, and failed to terminate them. (Vol.II:14:22–15:2).

19. Krolikowski agrees that the company had the right to set work rules, to expect employees to follow those rules, and to discipline employees who did not follow the rules, including Krolikowski. Krolikowski agrees that an employer does not discriminate just because it disciplines an employee. (96:12–25).

20. Krolikowski believes that Yetter, Busekist and Hester did not like her and wanted to fire her for at least two years because she stood up for herself. (93:9–94:4). Krolikowski contends that Hester was rude and unprofessional to her because of her pregnancy, but admits that

his alleged "rudeness" began in 1994. (110:20–101:4).

21. Krolikowski also asserts that she was terminated to prevent her from taking leave for maternity. (20:4–16). However, RG has had a leave policy for maternity at least 15 years, and Krolikowski was told at the time she was hired in 1993 that maternity leave was available to her. (34:10–25; Affidavit of Hester).

22. As store manager, Hester must approve all requests for maternity leave. In his 14 years with RG, he has never denied such a request. Indeed, Hester approved maternity leave for Julie Busekist on June 6, 1996, and an extension of the leave on July 19, 1996, just two months before Krolikowski's termination. (Affidavit of Hester).

23. Krolikowski admits that no one in RG management ever told her that she could not take maternity leave or that she would not be allowed to return from such leave. (Vol. II: 13:19–14:2).

24. Krolikowski never complained of discrimination to anyone at RG. Indeed, she admits that she never even called the corporate headquarters in Omaha to contend she was being treated differently because she was pregnant. (119:11–25).

25. On the same day Hester terminated Krolikowski, he terminated Tony Smith, a male, for violation of the Employee Purchase Policies. Smith had taken merchandise, placed it in a duffel bag and hid it in his locker in the store room. He then attempted to place the merchandise in the manager's office. (Affidavit of Hester; Ex. D, Separation Notice for Smith; 41:9–43:5).

26. Krolikowski knows another woman named Jill who became pregnant in 1994 while at RG's Lincoln, Nebraska store and returned to work. (35:3–20).

## DISCUSSION

### Motion for Summary Judgment

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.,* 23 F.3d 1444, 1446 (8th Cir.), *cert. denied,* 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994).

Summary judgment is an extreme and treacherous device, which should not be granted unless the moving party has established a right to a judgment with such clarity as to leave no room for controversy, and unless the other party is not entitled to recover under any discernible circumstance. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir. 1980). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Id.See also Reierson v. Resolution Trust Corp.,* 16 F.3d 889, 891 (8th Cir.1994). Even if the district court is convinced that the moving party is entitled to judgment, the exercise of sound judicial discretion may dictate that the motion should be denied, in order that the case can be fully developed at trial. *McLain v. Meier,* 612 F.2d 349, 356 (8th Cir.1979).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied,* 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

As Krolikowski is unable to establish a prima facie case of pregnancy discrimination, summary judgment is appropriate in this case. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### Elements of a prima facie case of pregnancy discrimination

■ Krolikowski does not offer any direct evidence of discriminatory intent to support her claim, so I must analyze the facts of her claim under the familiar burden-shifting framework set out by the *McDonnell Douglas* line of cases. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under that framework, in order to survive a motion for summary judgment, Krolikowski must first establish a prima facie case of pregnancy discrimination, namely (1) that she is a member of a group protected by Title VII; (2) that she was qualified for the position of sales associate with RG; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly situated non-pregnant sales associates in the application of work or disciplinary rules. *Lang v. Star Herald,* 107 F.3d 1308, 1311 (8th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 114, 139 L.Ed.2d 66 (1997); *Armstrong v. Flowers Hospital, Inc.,* 33 F.3d 1308, 1314 (11th Cir.1994). All the shouting in this case concerns the fourth element of the prima facie case.

■ The evidence establishes that Krolikowski was terminated from her employment in September 1996 for violation of the "Employee Purchase Policy." The purchase policy prohibits employees from stashing merchandise in the stockroom or in the employee's locker until the employee is able to purchase the merchandise. The policy is intended to curb employee theft. The evidence also establishes that two non-pregnant female employees were terminated from their employment with RG in May 1996 for violation of the purchase policy. The evidence also establishes a male employee was terminated from his employment with RG on the same day Krolikowski was terminated when it was discovered the male employee had also violated the purchase policy by hiding merchandise in his locker in the store room prior to attempting to purchase the merchandise.

Krolikowski admits she violated the purchase policy. Krolikowski also admits RG has the right to set work rules and to discipline employees who do not follow the rules. Krolikowski agrees that an employer does not discriminate just because it enforces its policies and disciplines an employee. Krolikowski takes issue, however, with what she characterizes as the selective enforcement of the purchase policy. Krolikowski argues that the application of the policy to her, without application to nonpregnant RG managers who were also allegedly violating the policy, amounts to discrimination based on her pregnancy. Krolikowski claims to be aware that four coworkers allegedly violated the same purchase policy, although she admits she has no evidence that RG had any knowledge that these persons violated the policy. The defendant's evidence establishes that it had no knowledge of violations of the policy by non-pregnant RG managers or other workers, but had it known, those employees would have been terminated as well.

The PDA requires employers to treat employees who are members of a protected class the same as other similarly situated employees. The PDA does not require employers to make accommodations for their pregnant workers and the PDA does not create a right to preferential treatment. In fact, employers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees. *Lang,* 107 F.3d at 1312–13. In this case Krolikowski is unable to establish that non-pregnant employees who violated the purchase policy were treated more favorably than she was for the same violation. Krolikowski has not presented any evidence which would lead to the reasonable conclusion that RG knew of violations by other workers and chose to do nothing about them, and instead only disciplined Krolikowski. Furthermore, there is no evidence that RG was only targeting pregnant workers for policy enforcement, rather than applying the policy to all workers who were known to RG to have violated the policy. *Smith v. Monsanto Chemical Co.,* 770 F.2d 719, 724 (8th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986).

The undisputed facts make it clear Krolikowski is unable to establish the fourth element of a prima facie case of pregnancy discrimination. Krolikowski has no evidence that she was treated differently than similarly situated employees. The evidence establishes two non-pregnant females were fired prior to Krolikowski's termination for violation of the purchase policy. And on the same day as Krolikowski's termination, a male was terminated for the same violation. As I am persuaded Krolikowski has failed to establish the fourth element of a prima facie case of pregnancy discrimination, Krolikowski cannot avoid summary judgment. Consequently, I need not reach the ultimate question of whether her pregnancy was a motivating factor in her discharge. *Lang,* 107 F.3d at 1312.

Accordingly,

IT IS ORDERED Defendant's motion for summary judgment, (filing 13), is granted, and Plaintiff's complaint is dismissed with prejudice.